# In the United States Court of Federal Claims

No. 13-508C

(Filed Under Seal: November 13, 2013)

Reissued: November 27, 2013[1]

_____

| | |
|---|---|
| LYON SHIPYARD, INC., | * Pre-award bid protest; Cross-motions for |
| | * judgment on the administrative record; |
| | * ID/IQ contract for marine boatyard services; |
| Plaintiff, | * *Bannum* – standard of review; FAR § |
| | * 15.306(d) – meaningful discussions; Agency |
| v. | * did not abuse its discretion in conducting |
| | * discussions and in failing to reopen |
| THE UNITED STATES, | * discussions; Agency did not engage in |
| | * unequal treatment in evaluating the |
| Defendant. | * reasonableness of prices. |
| | * |

_____

## OPINION

_____

*Michael John Gardner,* Troutman Sanders, LLP, Norfolk, VA, for plaintiff.

*John Bryan Warnock*, Civil Division, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Stuart F. Delery*, for defendant.

**ALLEGRA, Judge:**

    In this post-award bid protest action, Lyon Shipyard, Inc. (Lyon), of Norfolk, Virginia, challenges the Navy's decision to award a contract for marine boatyard services to Marine Hydraulics International (MHI). It claims that the Navy did not conduct meaningful discussions and failed to treat all offerors equally. The parties have filed cross-motions for judgment on the administrative record. For the reasons that follow, the court **DENIES** plaintiff's motion for judgment on the administrative record and **GRANTS** defendant's cross-motion.[2]

_____

[1] An unredacted version of this opinion was issued under seal on November 13, 2013. The opinion issued today incorporates the parties' proposed redactions and corrects some minor nonsubstantive or typographical errors. The redacted materials is represented by brackets [ ].

[2] Owing to the urgent need of the parties for a ruling on this matter, the court's recitation of the facts and law is necessarily brief.

I.      BACKGROUND

The administrative record in this case reveals the following:

In June of 2011, the Navy issued Solicitation (Solicitation) No. N50054-11-R-0002 to procure the "necessary management, material support services, labor, supplies, and equipment deemed necessary to provide marine boatyard and industrial support . . . and periodic maintenance primarily in support of . . . boats, craft, lighterage, and service craft custodians" in the Hampton Road area of Virginia.  The Solicitation organized the work requirements into two separate lots, Lots I and II[3] – only the latter is the subject of this bid protest.  It contemplated the award of multiple indefinite delivery/indefinite quantity (ID/IQ) contracts to up to five awardees.  Firm, fixed-price task orders would be competed among the five awardees.  Each contract has a twelve-month ordering period, with four one-year options.

The Solicitation advised offerors that awards will be made to "the responsible offeror or offerors whose offer, conforming to the solicitation, is deemed most advantageous to the Government, price and other factors considered."  According to the Solicitation, the factors to be considered in determining the best value were "technical," "past performance," and "price."  Offerors were advised that the "[n]on-price factors (Technical and Past Performance), taken together, will be more important than price," adding though that "as non-price factors equalize among competing proposals, price may assume a greater degree of importance."

In the Solicitation, the Navy emphasized that the proposed prices should be "fully burdened," to include, *inter alia*, "the potential of escalating fuel costs, all direct and indirect costs, labor, equipment rental, services, overhead, profit," *etc*.  The Solicitation required offerors to propose a composite labor rate, a material handling and a travel rate, as well as rates for boat storage, lift and towing, each of which were multiplied by a notional quantity provided by the Navy for evaluation purposes.  The Solicitation stated that a proposed price would "be evaluated independently to determine whether it is reasonable and whether it reflects the offeror's understanding of the work and ability to perform the contract."  Price evaluations "include[d] a comparison of the proposed prices and a comparison of the proposed prices against the independent government estimate [IGE]."  Finally, the Solicitation warned that "[a] price proposed that is unrealistic, unreasonable, or unbalanced may be rejected."

---

[3]  According to the Solicitation:

Lot II is for marine boatyard services and industrial support for boats, craft, lighterage and service craft that are either:  (1) less than 15 meters or 50 feet in length as determined by the Navy hull designation, but if no Navy hull designations [sic] exists, less than 50 feet in overall length, but which cannot be transported via roadway, but must be delivered on its bottom (via waterway) as defined by the task order; or (2) is 15 meters or 50 feet in length or greater as determined by Navy hull designation, but if no Navy hull designation exists, then 50 feet or greater by length overall.

The Solicitation advised that "all offerors selected to participate in discussions shall be advised of deficiencies in their offer, and shall be offered a reasonable opportunity to correct or resolve the deficiencies and to submit such price or cost, or other revisions to their offer, that may result from the discussions."  It further indicated that "[a] contract award under this request for proposals (RFP) will be the result of an integrated assessment by the Contracting Officer of the results of the evaluation based on the evaluation factors and their relative order of importance."  The Solicitation stated that the Navy intended "to make a best value determination for contract award," adding that the Navy "may award any resulting contract to other than the lowest priced offeror, or other than the offeror with the highest evaluation rating for technical and past performance."

On July 26, 2011, the Navy received eight proposals for Lot II from the following:  East Coast Repair and Fabrication (East Coast), Alliance Technical Services (Alliance), Davis Boat Works (Davis), Associated Naval Architects (Associated), Colonna's Shipyard (Colonna's), Marine Hydraulics International (MHI), Bluewater Yacht Sales (Bluewater), and Lyon Shipyard (Lyon).  Most of the offerors, including Lyon, were incumbents on the prior marine boatyard support contract.

Between August 23 and September 27, 2011, the Source Selection Evaluation Board (SSEB) evaluated each offeror's technical proposal to assess its strengths and weaknesses.  On October 11, 2011, the SSEB reported its preliminary findings to the Source Selection Advisory Council (SSAC), assigning in its report a consensus rating to the offeror's technical proposals. On or about December 9, 2011, the SSEB modified its ratings of the technical proposals competing for Lot II.  After an initial round of discussions focusing on the deficiencies, omissions and weaknesses associated with the proposals, two of the offerors (Associated and Bluewater) withdrew their offers for Lot II.

On or about June 15, 2012, additional discussions were held with the offerors remaining in the competitive range.  As part of those discussions, the Navy, in an attachment to an email, informed Lyon that its "price proposal for Lot II [was] significantly higher than the Government estimate."  It requested that Lyon "carefully review [its] pricing and specifically note the following:"

Note 1 of pricing Exhibits which states that proposed rates for each line item are to be fully burdened (refer to Note 1 for complete wording).

Note 2 of pricing Exhibits which states that ELINS [exhibit line item numbers] are to be fully burdened to include any required subcontractors and subcontract effort shall not be priced as material or considered as part of the material pools.

Note 3 of pricing Exhibits which states that it is anticipated that 98% of the boats are located in the Norfolk, VA vicinity (refer to Note 3 for complete wording).

Note 4 of pricing Exhibits which states that overtime is not authorized under the terms and conditions of this contract (refer to Note 4 for complete wording).

Note 5 of pricing Exhibits which states that ELINS are to be fully burdened to include any required rental equipment (refer to Note 5 for complete wording).

The Navy's attachment concluded with the following remarks:

Offerors are strongly reminded to ensure all costs associated with accomplishing this work have been considered and are included in your price.  These elements will not be allowed on individual task orders.

Please **do not submit new pricing** at this time.  Please only submit your rationale and confirmation that the notes in the exhibits have been accounted for in your pricing.

You are hereby afforded the opportunity to provide this office with clarifying or additional information for the areas identified above.

(Emphasis in original).

Responses to the discussion questions were due on June 27, 2012.  On that date, Lyon submitted the following response to the questions raised regarding its pricing:

Lyon Shipyard's price proposal was constructed utilizing over twenty (20) years of past experience repairing these very same small boats, including the last ten (10) years as an incumbent small boat IDIQ contractor.  We are very familiar [sic] all of the vessels and their systems that are included in Lot II of this solicitation.  Our pricing was arrived at using experience and knowledge gained as well as detailed job cost reporting from numerous past task orders.  We have taken into consideration all aspects and requirements of Notes 1 thru 5 of the pricing exhibits in arriving at our offered pricing.  It should be recognized that the offered pricing represents the most fully burdened and worst case scenarios that could arise for any particular task order including length of availability, degree of difficulty in scope of work, and the potential numbers of subcontractors and government required specialty tech reps.  Our past history explicitly shows that Lyon Shipyard, Inc. has been extremely competitive in individual task order bidding.  However, we will review and evaluate all pricing offered for mistakes, completeness, and accountability.  Should we deem it necessary to make any changes to our pricing, we will do so when requested for final offers.

From July 18-20, 2012, the SSEB considered the additional information submitted by the remaining offerors on their technical proposals and past performance.  During this same time period, a contract specialist reviewed the offerors' responses regarding price, including the response provided by Lyon above.  On October 18, 2012, the contract specialist established the competitive range for Lot II, which included the following offerors:  East Coast, Alliance, Davis, Colonna's, MHI and Lyon.  On February 22, 2012, the SSEB produced an evaluation of the offerors' past performance, in which Lyon preliminarily received an overall rating of "very

- 4 -

good." In a November 3, 2012, memorandum, the contracting specialist further analyzed the price proposals, finding East Coast to be the lowest bid at $81,098,416.30, and Lyon to be the highest bid at $[].

On February 8, 2013, the Navy received Final Proposal Revisions (FPRs). Lyon's price was unchanged. In a February 19, 2013, pricing memorandum to the file, the contracting specialist, legal counsel, and the procurement contracting officer reviewed the prices in the FPRs. Regarding Lyon's pricing proposal, this memorandum concluded:

> Based on my evaluation, I considered the Lot II pricing to be fair and reasonable for East Coast Repair, Davis Boat Works, Alliance Technical Services, Colonna's Shipyard and Marine Hydraulics International while reflecting an ability to perform the requirements of the solicitation. I did not consider their prices to be unreasonable, unbalanced, excessive, or otherwise a significant weakness or deficiency. As reflected in the bottom line prices of these offerors, there are some wide variances in some of the ELIN prices. Since this will be a multiple award, additional competition will occur at the task order level. This procurement allows for contractors competing for award of task orders to reduce prices by proposing lower prices than what they submitted in their final proposal revision. It is felt that competition of individual task orders will result in lower prices from the firms and thereby the potential for Marine Hydraulic International's pricing to become more in line with the other offerors and the government estimate and provide ample opportunity for offerors to receive awards under these contracts. I considered the differences to be within an acceptable range for an Indefinite Delivery/Indefinite Quantity procurement of this nature and magnitude. However, Lyon Shipyard's price is $[] higher than the IGE and is not in line with the other offerors. Lyon Shipyard's price is considered excessive and would be more difficult to justify as reasonable.

Based on this analysis, the memorandum recommended that the final award be made to MHI.

On February 21, 2013, the Source Selection Advisory Committee (SSAC) convened to determine its recommendations for award under the Solicitation. On February 28, 2013, the SSAC issued a memorandum summarizing its recommendations, reflecting the following prices and ratings for each of the remaining offerors:

| Offeror | Final Price | Technical Rating | Past Performance Rating |
|---|---|---|---|
| East Coast Repair & Fabrication | $80,269,356.44 | Very Good | Very Good |
| Alliance Technical Services | $89,074,484.86 | Satisfactory | Satisfactory |
| Davis Boat Works | $89,061,384.24 | Very Good | Very Good |
| Colonna's Shipyard | $103,384,711.08 | Very Good | Very Good |
| Marine Hydraulics International | $107,005,537.54 | Very Good | Very Good |
| Lyon Shipyard | $[] | Very Good | Very Good |

The authors of this memorandum indicated that they had conducted a trade-off analysis among the six offerors for Lot II.  The memorandum noted that the IGE for Lot II was $101,780,712.59.  Regarding this estimate, the memorandum indicated that Lyon's price (and that of another offeror) "were considerably higher than the Government estimate and not in line with the other offerors."  On this point, the memorandum continued –

> Although their prices were not determined to be unfair or unreasonable, the Contracting Officer determined that their prices would be more difficult to justify as reasonable.  However, as no specific language existed within [the Solicitation] to exclude them from further consideration, both remained part of the SSAC's trade-off analysis.

The memorandum reflected that the SSEC had compared MHI's and Lyon's proposals, and found that "[b]ecause both offerors have identical Technical and Past Performance ratings and MHI offers the lower price, the SSAC did not consider it to be in the best interest of the Government to pay the price differential of  []% ($[]) in order to award to Lyon."  The SSAC added that "MHI represents the better value" and that "there were no circumstances present which justified paying the price differential to award" Lyon over MHI.

On March 1, 2013, the Source Selection Authority (SSA) made awards to each Lot II offeror remaining in the competitive range, except Lyon, based on an independent determination that each offer represented the best value to the Navy   In taking this action, the SSA concluded that "[t]here were no circumstances present which justified paying the price differential" for an award to Lyon.  After receiving notice of the award and a debriefing, on April 8, 2013, plaintiff filed a timely GAO protest, claiming that the Navy misled Lyon during discussions and improperly evaluated its proposal.  On July 15, 2013, the GAO denied plaintiff's protest.  *See Lyon Shipyard, Inc.*, 2013 WL 3830050 (Comp. Gen. July 15, 2013).

On July 25, 2013, plaintiff filed its complaint in this court, together with a motion for a preliminary injunction.  On August 7, 2013, following oral argument, this court denied, from the bench, plaintiff's motion for a preliminary injunction.  The parties then filed cross-motions for judgment on the administrative record,[4] for which oral argument was held on October 16, 2013.

---

[4]  On August 26, 2013, Lyon moved to supplement the record with additional emails and correspondences between the Navy contracting officials.  On September 6, 2013, it then moved for sanctions, claiming that defendant failed to file a complete administrative record.  On that day, this court ordered defendant to supplement the administrative record with emails, evaluation worksheets and other documents relating to the evaluation of Lyon's Lot II proposal.  While the court's order may have left this point ambiguous, the court did not require defendant to file, as part of the administrative record, the notes of individual agency employees associated with this procurement.  The court took the latter step because the evaluation process here did not "include[] the concrete step of individual evaluations," rendering the "individual's notes . . . more akin to drafts that may be excluded" from the administrative record.  *Tech. Sys. v. United States*, 98 Fed. Cl. 228, 246 (2011); *see also Tauri Grp. LLC v. United States*, 99 Fed. Cl. 475, 481 (2011).  As it turns out, the notes were destroyed as part of a document destruction protocol.

- 6 -

## II.   DISCUSSION

Before turning, in detail, to plaintiff's substantive claims, we begin with common ground.

### A.   Standard of Review

The Federal Circuit, in *Bannum, Inc. v. United States*, 404 F.3d 1346, 1355 (Fed. Cir. 2005), instructed that courts must "distinguish [a] judgment on the administrative record from a summary judgment requiring the absence of a genuine issue of material fact." *Bannum* teaches that two principles commonly associated with summary judgment motions – that the existence of a genuine issue of material fact precludes a grant of summary judgment and that inferences must be weighed in favor of the non-moving party – do not apply in deciding a motion for judgment on the administrative record. *Id.* at 1356. The existence of a question of fact thus neither precludes the granting of a motion for judgment on the administrative record nor requires this court to conduct a full blown evidentiary proceeding. *Id.*; *see also Int'l Outsourcing Servs., LLC v. United States*, 69 Fed. Cl. 40, 45-46 (2005). Rather, such questions must be resolved by reference to the administrative record, as properly supplemented – in the words of the Federal Circuit, "as if [the Court of Federal Claims] were conducting a trial on [that] record." *Bannum*, 404 F.3d at 1354; *see also NEQ, LLC v. United States*, 88 Fed. Cl. 38, 46 (2009); *Int'l Outsourcing*, 69 Fed. Cl. at 46; *Carlisle v. United States*, 66 Fed. Cl. 627, 631 (2005).

*Bannum*'s approach is well-suited to the limited nature of the review conducted in bid protests. In such cases, this court will enjoin defendant only where an agency's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *see also* 28 U.S.C. § 1491(b)(4). By its very definition, this standard recognizes the possibility of a zone of acceptable results in a particular case and requires only that the final decision reached by an agency be the result of a process which "consider[s] the relevant factors" and is "within the bounds of reasoned decisionmaking." *Baltimore Gas & Elec. Co. v. NRDC, Inc.*, 462 U.S. 87, 105 (1983); *see Glenn Defense Marine (Asia) PTE, Ltd. v. United States*, 97 Fed. Cl. 311, 317 (2011); *Gulf Group, Inc. v. United States*, 56 Fed. Cl. 391, 396 n. 7 (2003). As the focus of this standard is more on the reasonableness of the agency's result than on its correctness, the court must restrain itself from examining information that was not available to the agency. Failing to do so, the Federal Circuit has observed, risks converting arbitrary and capricious review into a subtle form of *de novo* review. *See Axiom Res. Mgmt., Inc. v. United States,* 564 F.3d 1374, 1379-80 (Fed. Cir. 2009). At all events, this court will interfere with the government procurement process "only in extremely limited circumstances." *CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1581 (Fed. Cir. 1983) (quoting *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1372 (Fed. Cir. 1983)).

_____

However, because plaintiff's sanctions motion concerned documents that the court did not require the Navy to file, the sanctions motion must be denied.

The aggrieved bidder must demonstrate that the challenged agency decision was either irrational or involved a clear violation of applicable statutes and regulations. *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004), *aff'g*, 56 Fed. Cl. 377, 380 (2003); *see also ARINC Eng'g Servs., LLC v. United States*, 77 Fed. Cl. 196, 201 (2007). Moreover, "to prevail in a protest the protester must show not only a significant error in the procurement process, but also that the error prejudiced it." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996). To demonstrate prejudice, "the protester must show 'that there was a substantial chance it would have received the contract award but for that error.'" *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996)).[5] "Finally, because injunctive relief is relatively drastic in nature, a plaintiff must demonstrate that its right to such relief is clear." *NEQ*, 88 Fed. Cl. at 47; *see also Banknote Corp.*, 56 Fed. Cl. 377, 380–81 (2003); *Seattle Sec. Servs., Inc. v. United States*, 45 Fed. Cl. 560, 566 (2000).

## B.     Were the Actions of the Contracting Officer Arbitrary, Capricious or Otherwise Contrary to Law?

Lyon argues that the Navy violated FAR § 15.306(d) by failing to conduct meaningful discussions about its price proposal. Lyon further argues that once the Navy determined that its proposed price was "excessive" and "more difficult to justify as reasonable," FAR § 15.306(d) required the Navy to reopen discussions. Finally, Lyon asserts that the Navy improperly evaluated the offerors' price proposals because it "unequally considered task order competition in justifying its award to MHI," failed to consider Lyon's historical task order pricing, and made an "apples to oranges" comparison between Lyon's price and the independent government estimate. The court will address these arguments *seriatim*.

As the parties agree, agencies generally are required to conduct "meaningful" discussions with all responsible offerors that submit proposals within the competitive range. *See* 48 C.F.R. §

---

[5] Federal Circuit cases teach that this prejudice analysis comes in two varieties. The first is that described above – namely, the ultimate requirement that a protestor must show prejudice in order to merit relief. A second prejudice analysis is more in the nature of a preliminary standing inquiry. In this regard, the Federal Circuit has held that "because the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003); *see also Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1370 (Fed. Cir. 2002); *Overstreet Elec. Co., Inc. v. United States*, 59 Fed. Cl. 99, 109 n. 5 (2003). Cases construing this second variation on the prejudice inquiry have held that it requires merely a "viable allegation of agency wrong doing," with "'viability' here turning on the reasonableness of the likelihood of prevailing on the prospective bid taking the protestor's allegations as true." *McKing Consulting Corp. v. United States*, 78 Fed. Cl. 715, 721 (2007); *see also 210 Earll, LLC v. United States*, 77 Fed. Cl. 710, 719 (2006); *Textron, Inc. v. United States*, 74 Fed. Cl. 277, 284-85 (2006). Because of the central nature of the allegations of error here, the court concludes that plaintiff has met this preliminary "standing" threshold – and defendant does not contend otherwise.

15.306(d); *see also Elec. Data Sys., LLC v. United States*, 93 Fed. Cl. 416, 432 (2010); *EP Prods., Inc. v. United States*, 63 Fed. Cl. 220, 226 (2005), *aff'd*, 163 Fed. Appx. 892 (Fed. Cir. 2006); *Dynacs Eng'g Co. v. United States*, 48 Fed. Cl. 124, 131 (2000) ("The law is well-settled that discussions between a contracting officer and offerors must be meaningful."). Such discussions "are intended to maximize the government's ability to obtain the 'best value' in a contract award based on the requirements and the evaluation factors set forth in the solicitation." *Dynacs Eng'g Co.*, 48 Fed. Cl. at 130; *see also* 48 C.F.R. § 15.306(d)(2); *ManTech Telecomm. & Info. Sys. Corp. v. United States*, 49 Fed. Cl. 57, 71 (2001). However, the FAR emphasizes that "the contracting officer is not required to discuss every area where the proposal could be improved" and that instead "[t]he scope and extent of discussions are a matter of contracting officer judgment." 48 C.F.R. § 15.306(d)(3); *see also Elec. Data Sys.*, 93 Fed. Cl. at 432; *EP Prods.*, 63 Fed. Cl. at 226; *PGBA, LLC v. United States*, 60 Fed. Cl. 196, 217 n. 25 (2004), *aff'd*, 389 F.3d 1219 (Fed. Cir. 2004).

While paying lip service to this discretion, plaintiff asserts that the Navy officials here were obliged to let it know that its price was excessive. But, "there are very few affirmative requirements for discussions," *CRAssociates v. United States*, 102 Fed. Cl. 698, 716 (2011), with the main exceptions arising in FAR § 15.306(d)(3), which obliges the agency: (i) to conduct discussions with all offerors in the competitive range if it holds discussions with one of the offerors in that group; and (ii) to discuss "deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to respond." FAR § 15.306(d)(3). FAR § 15.306(e) also lists some discussion requirements in the negative – for example, that the agency "shall not engage in conduct that – [f]avors one offeror over another." FAR § 15.306(e)(1); *see also Elec. Data Sys.*, 93 Fed. Cl. at 432; *Kerr Contractors, Inc. v. United States*, 89 Fed. Cl. 312, 329 (2009) ("This regulation does not permit a procuring agency to engage in unequal discussions."). Moreover, it is well-accepted that discussions may not be misleading. *See CRAssociates*, 102 Fed. Cl. at 716 n. 18; *Bank of America, Metro Mach. Corp.*, 99-1 C.P.D. ¶ 101, at 6-7 (1999); *SRS Techs.*, 94-2 C.P.D. ¶ 125, at 6 (1994).

Contrary to plaintiff's claim, there is no rule – either explicit or deriving from the notion that discussions must be "meaningful" – that required the Navy to discuss every weakness appearing in Lyon's pricing proposal. *See CRAssociates,* 102 Fed. Cl. at 717; *Geo–Centers, Inc.*, 97-1 C.P.D. ¶ 182 (1997); *Ann Riley Assocs., Ltd.*, 97-1 C.P.D. ¶ 122 (1997); *see also Fort Carson Support Servs. v. United States*, 71 Fed. Cl. 571, 604 (2006) ("T]he FAR provision requires a discussion of 'significant weaknesses,' not all weaknesses." (quoting FAR § 15.306(d)(3)). In particular, the Navy was not obliged to advise Lyon that its price was higher than those of its competitors. Rather, an agency is obliged to discuss an offeror's price only if the price submitted "'would preclude award to the firm.'" *DMS All-Star Jt. Venture v. United States*, 90 Fed. Cl. 653, 669 (2010) (quoting *Gen. Dynamics-Ordnance & Tactical Sys.*, 2009 C.P.D. ¶ 217 (2009); *see also Elec. Data Sys.*, 93 Fed. Cl. at 432. Such was not the case here.

To be sure, FAR § 15.306(e)(3) gives the contracting officer discretion to inform an offeror that "its price is considered by the Government to be too high, or too low." But neither that provision, nor any other, requires the contracting officer to discuss a proposed price that is not considered a significant weakness or deficiency. *See Elec. Data Sys.*, 93 Fed. Cl. at 434;

*Dynacs Eng'g*, 48 Fed. Cl. at 133; *Public Facility Consortium I, LLC*, 2005 C.P.D. ¶ 170 (2005); *AJT & Assocs.*, 2000 C.P.D. ¶ 60 (2000).[6]   The Federal Circuit made this clear in *JWK Int'l Corp.*, rejecting the notion that an agency must always discuss prices because their adjustment could materially enhance a proposal's potential for award.   In so concluding, that court reasoned –

> Because both cost and non-cost factors must be considered and the agency has full discretion to rank the importance of the factors, a downward cost adjustment may not always affect the award.   Therefore, cost is not always material, and does not automatically mandate discussions.

*JWK Int'l Corp. v. United States*, 279 F.3d 985, 988 (Fed. Cir. 2002).[7]   Based on these precedents, the Navy was not required to discuss plaintiff's price because the agency had determined that this price was at least arguably reasonable, albeit too high.   Therefore, plaintiff's arguments regarding the lack of meaningful discussions fail to persuade the court.

Nor was Lyon misled in terms of how the agency conducted discussions here.   In the first round of discussions, it was advised that its "price proposal for Lot II [was] significantly higher than the Government estimate" and that it should "carefully review [its] pricing."   While the discussion points went on to list potential issues that Lyon should examine in regards to its price and indicated that Lyon should not submit new pricing "at this time," this in no way suggested that Lyon need not consider reducing its price in its final offer.   Lyon appears to have understood this, as it responded to the first round of discussions questions by indicating that it would "review and evaluate all pricing offered for mistakes, completeness, and accountability," adding that "[s]hould we deem it necessary to make any changes to our pricing, we will do so when requested for final offers."   As a seasoned government contractor and a ten-year incumbent of two prior similar contracts, Lyon should not have presumed that it did not need to modify its final price because the Navy failed to raise any concerns about its high price in the second or third rounds of discussions.   At the time it made its best and final offer, Lyon had no reason to think that the IGE had changed and every reason to believe that its price was still well above that estimate.   Nor, contrary to its claims, did it have any reasonable basis upon which to assume that the Navy would evaluate it offer based on historical task order prices, rather than the "fully

---

[6]   Plaintiff notes that in *Banknote Corp.*, the undersigned wrote that an agency must also inform an offeror that its cost or price is high when that cost or price is "excessive."   56 Fed. Cl. at 385.   Further review, however, reveals this statement to be inconsistent with the FAR, which instead focuses on whether the price is unreasonable or is considered a "significant weakness or deficiency."   *Elec. Data Sys.*, 93 Fed. Cl. at 434; *see also Patriot Taxiway Indus., Inc. v. United States*, 98 Fed. Cl. 575, 588 (2011); *Tech Sys.*, 98 Fed. Cl. at 262.

[7]   *See also DMS All–Star*, 90 Fed. Cl. at 669 ("unless an offeror's costs constitute a significant weakness or deficiency in its proposal, the contracting officer is not required to address in discussions costs that appear to be higher than those proposed by other offerors"); *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 372 (2009); *Banknote Corp.*, 56 Fed. Cl. at 385.

loaded rates" required by the Solicitation. Simply put, Lyon made a business decision not to adjust its price and should not be heard to complain now when that decision led to the loss of the contracting opportunity, particularly as the Solicitation warned that "as non-price factors equalize among competing proposals, price may assume a greater degree of importance." *See Tech Sys.*, 98 Fed. Cl. at 263 (rejecting a similar argument).

Undeterred, plaintiff complains that the Navy should have reopened discussions with it to discuss its price. But, the decision whether to reopen discussions is largely a matter left to the agency's discretion. *The Matthews Grp.*, 2013 C.P.D. ¶ 148 (2013); *King Farm Assocs.*, 2012 C.P.D. ¶ 6 (2011); *ES, Inc.*, 95-1 C.P.D. ¶ 168 (1995). To be sure, it has been held that an agency should reopen discussions with an offeror, if after the evaluation of best and final offers, the agency "identifies concerns pertaining to the proposal as it was prior to discussions that would have had to be raised if they had been identified before discussions were held." *Al Long Ford*, 2006 C.P.D. ¶ 68 (2006) (citing *DevTech Sys., Inc.*, 2001 C.P.D. ¶ 11 (2000)); *see also CIGNA Gov't Servs.*, 2010 C.P.D. ¶ 283 (2009); *Ewing Construction Co., Inc.*, 2010 C.P.D. ¶ 108 (2010). But, this requirement applies only to significant weaknesses or deficiencies of the sort that would warrant discussions in the first place. *See AT&T Corp.*, 2008 C.P.D. ¶ 65 (2007). An agency need not reopen discussions simply because it perceives some weakness in an offeror's best and final proposal. *See W.M. Schlosser Co., Inc.*, 92-2 C.P.D. ¶ 8 (1992); *see also Data Gen. Corp. v. Johnson*, 78 F.3d at 1561. More specifically, a reopening of discussions is not required where "a weakness, which was not addressed during discussions, subsequently becomes a determinative factor in choosing between two closely ranked proposals . . ." *Planning & Dev. Collaborative Int'l*, 2007 C.P.D. ¶ 28 (2007); *see also Gracon Corp.*, 2004 C.P.D. ¶ 58 (2004); *Hines Chicago Inv.*, 2004 C.P.D. ¶ 5 (2003). Here, the court sees no evidence that the contracting officer abused his discretion in determining not to reopen discussions with Lyon.

Finally, plaintiff argues that the Navy treated the offerors unequally because it considered MHI's task order pricing in evaluating MHI's price, but did not do so in evaluating plaintiff's price.[8] As defendant points out, however, the Navy referenced MHI's task order pricing not in evaluating its price, but merely in determining that its price was reasonable. The Navy, of course, also concluded that plaintiff's price was reasonable, albeit without considering its task

---

[8] In arguing that its task order pricing had always been very competitive, plaintiff cited to attachments to its complaint and an affidavit made by one of its employees. However, plaintiff never sought to supplement the record with these materials. Supplementation is not accomplished simply by attaching a document to a complaint or a brief. *See Murakami v. United States*, Order No. 99-55C (Fed. Cl. June 18, 2001) (refusing to treat materials attached to a filing as supplementation, indicating that "[t]o hold otherwise would be to render the concept of an administrative record a nullity to be bypassed at will simply by including an affidavit as part of a brief."). Even if the court were to consider these materials (on the assumption that the pricing information they contain was before the agency), they would not indicate the existence of a prejudicial error here. Under the Solicitation, that plaintiff's prior task order pricing had been competitive and had led it to receive many task orders was not relevant to the evaluation of its price, which, again, was $[] more than the next highest-priced offeror.

- 11 -

order pricing.  Both prices were considered reasonable and hence, there was no unequal treatment and certainly no prejudice.  Even if the Navy could be viewed as having considered task order pricing in directly evaluating MHI's price or in conducting its best value determination, plaintiff has not come close to demonstrating that it was prejudiced by the Navy's conduct in this regard – that but for this error, "there was a substantial chance it would have received the contract award."  *Alfa Laval Separation*, 175 F.3d at 1367; *see also Bannum*, 404 F.3d at 1351; *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1326 (Fed. Cir. 2011).  In this regard, plaintiff seemingly dons blinders to the fact that its price was more than $ [] – or [] percent – higher than MHI's.  And that substantial difference existed without any reduction in MHI's price to reflect its past task order pricing.  Since the proposals of the two offerors were otherwise rated the same, the court finds that plaintiff has failed to demonstrate that any alleged error made by the Navy in evaluating its price was prejudicial. [9]

## III.   CONCLUSION

This court has considered and finds unpersuasive plaintiff's remaining arguments.  Based on the foregoing, the court **GRANTS** defendant's cross-motion for judgment on the administrative record, and **DENIES** plaintiff's motion for judgment on the administrative record.  Plaintiff is not entitled to the relief requested. [10]   The Clerk is hereby ordered to dismiss plaintiff's complaint. [11]

**IT IS SO ORDERED**.

s/Francis M. Allegra
Francis M. Allegra
Judge

---

[9]   The same can be said of plaintiff's assertion that the Navy engaged in an "apples to oranges comparison" of plaintiff's final proposal price and the IGE.  While plaintiff argues that the Navy incorrectly used task order pricing from the prior contract to calculate that IGE, it has not demonstrated that it was prejudiced by this "error," either in the evaluation of its price (which was deemed reasonable) or in the award decision (which plaintiff lost because its price was significantly higher than that of MHI).

[10]   Even if the merits of this case were otherwise, the court would be disinclined to grant plaintiff any injunctive relief because of the importance of this contract to national defense and national security.  *See* 28 U.S.C. § 1491(b)(3); *see also Science Applications Intern. Corp. v. United States*, 108 Fed. Cl. 235, 248-49 (2012).

[11]   The court intends to unseal and publish this opinion after November 27, 2013.  On or before November 27, 2013, each party shall file proposed redactions to this opinion, with specific reasons therefor.  *See CRAssociates, Inc.*, 102 Fed. Cl. at 698 n. 1 (discussing the proper scope of such redactions).